tain it, but has ordered its removal, and the controversy is between the city council and the company. The main facts upon which the court based the opinion in that case, do not exi-t in this, and that case is not an authority supporting the claim made by the plaintiff here. Let an order be entered sustaining the demurrer.

*Alex. Hume, Thos. Millikin* and *John F. Neilan,* for the company.

*M. O. Burns, City Solicitor, Morey, Adams & Morey* and *E. H. Hull,* for the city.

[NOTE.—Affirmed by the circuit court.]

---

(Lucas County Court of Common Pleas.)

PATRICK KINNEY *v.* THE CITY OF TOLEDO.

*Voluntary payment.*—Money paid by a policeman into the city treasury by way of fines imposed upon him by the Police Board of the city of Toledo, by way of punishment for infractions of the rules of the police department, is paid voluntarily, and can not be recovered back, although no authority is conferred by statute on such police board to impose and collect such fines.

The Police Board of Toledo has no authority under the statute to assess and enforce such fines.

(Decided January 29, 1895.)

---

LEMMON, J.

The question made is presented upon demurrer to the petition, and the demurrer is a general demurrer, upon the ground that the facts stated in the petition do not warrant a recovery. The petition declares that the plaintiff brings his action to recover the sum of forty dollars, in which sum the defendant is indebted to him for money had and received by defendant of said plaintiff, and for money paid by said plaintiff to defendant from May 6, 1888, by the way of fines imposed upon him by the police board of said city.

The petition further states that at the time plaintiff paid said money he was in the employ of the city as a patrolman on the police force of the city, and said sum of money was paid under protest, and that the plaintiff was compelled to pay said fines or be dismissed from said service; that he received no consideration from said defendant for said sum of money so paid, save as above alleged.

It will be observed that there is no allegation here that any property of the plaintiff was detained from him, nor is there any threat to take from him any property otherwise than by due process of law; nor is there any allegation of plaintiff's being taken advantage of, deprived of his liberty or right of action in any way as a means of enforcing a demand against the plaintiff. For aught that appears, plaintiff may have chosen voluntarily to pay these several amounts to the city as a means of inducing the police board or those in control to overlook incompetency on his part, or improper action, for which they were about to proceed to discipline him; and, if he thus paid it, it presents the question whether he may, after paying it and serving upon the force until he has the benefits which he sought to obtain, and has in fact had, then recover it back. Now, the question presented by the demurrer to this petition, and the only question for the court to consider is, whether the money paid was paid voluntarily within the meaning of the definition which has been given by the decisions of the Supreme Court to the word " voluntary " in that connection. We will say, that from examination of the statutes we do not find any provision of the statute applicable to the question presented, except section 1992, which is

directly enacted with reference to and for the government of cities of the third grade of the first class, applicable to Toledo. The other sections which are cited we do not think applicable; and we do not find in section 1992 any power upon the part of the city board of police to assess fines against a policeman as a means of discipline. That section declares that:

"The police board may, for cause, and on notice, according to the rules of the board, remove or suspend from office, or for any definite time deprive from pay, any member of such police force; and it may at any time, by a vote of two-thirds of the members of the board, suspend or remove any officer or members of the police force, without assigning any reason therefor," etc.

Now, the words "may * * deprive from pay," do not allow the assessment of fines; it is a declaration that for a certain definite time they shall not receive pay, because of some action, and it by no means allows them to assess a fine and enforce it.

We come, therefore, to the only question that remains, whether the payment made from May to December, 1888, as alleged by the plaintiff in his petition, was a voluntary payment within the meaning which is given to that word by the Supreme Court of the state. This question we find has been before the Supreme Court many times. In the 1st Ohio St., in the case of *Mays* v. *Cincinnati*, which will be found on page 268, the Supreme Court, in the syllabus of the case, say: "Money paid to procure license, when issued upon the petition of the party, without objection or protest, is, in the legal sense, a voluntary payment, and cannot be recovered back." That is, where it is paid voluntarily, without protest, and paid to procure a license.

In the 6th Ohio St., the general doctrine in regard to what is voluntary payment and what involuntary, is stated by the Supreme Court, in the case of *City of Marietta* v. *Slocomb*, on page 471. There the court say: "Where payment of a demand made cannot be enforced without giving the party against whom it is asserted a day in court, and there is no duress of his person or property, its payment, though made under protest, is, in law, a voluntary one." And they declare: "An action cannot be maintained to recover back money paid, with full knowledge of the facts, in discharge of an assessment made by a municipal corporation."

The question has undergone considerable examination by the Supreme Court in the case of *Baker* v. *Cincinnati*, reported in the 11th Ohio St., on page 534. In that case an action was brought against the city of Cincinnati to recover moneys paid by the plaintiff to the city, in the sum of $63.50, to obtain a license to give theatrical exibitions in the city. The court say in considering the case: "Then comes the objection that this was a voluntary payment. In *Bilbie* v. *Lumley*, *Burbane* v. *Dacres*, and *Knibb* v. *Hall*, both parties might, to a certain extent, be considered as actors. Here the plaintiff was merely passive, and submitted to pay the sum claimed, as he could not otherwise procure his license."

The court cite 2 Barn. & Cres. 729, 734, 737; and say: "These cases show that the money may be properly held to have been paid involuntarily, or under coercion, where the position or interests of a party were such as to require from another the performance of a duty enjoined by law, and he was illegally compelled to pay the money to induce such performance. Undue advantage is not to be taken of the party's situation. There are other cases to which no express reference need be made, which sustain the same view."

And the court cite *Dew* v. *Parsons*, 18 Eng. Com. L. 87; *Colwell* v. *Piden*, Watts 327, 328; *Boston and Sandwich Glass Co.* v. *City of Boston*, 4 Metc. 181, 188; *County of La Salle* v. *Simons*, 5 Gilman 513, and say: "In view

of these authorities, we think we are not entitled to stop short, as argued by counsel for the defendant, upon the objection that the payment in this case was voluntarily made, but must examine the question whether that payment was illegally exacted. The plain language of a legislative enactment authorized the exaction of the money, but we are required to say that it was not obligatory upon the parties, because it was in violation of the constitution.".

And they then proceed to examine the question. In the 46th Ohio St., in *Railway Co.* v. *Iron Co.*, beginning at page 44, the court say : " The rule that a payment voluntarily made under a mistake of law, but with a full knowledge of the facts, cannot be recovered back, rests upon general principles of public convenience, and applies to a corporation as well as to a natural person."

In that case, the facts, of course, are wholly different from what they are in this case, but they involve reasons that are similar in the two cases. In the *Cleveland case*, the Iron company set up in their petition that they were exceedingly anxious to obtain a shipment of coal, which was much used in the carrying forward of their business, and, with that purpose in view, they subscribed for and agreed to take forty shares of stock of the Valley Railway company, and pay for the same in their manufacture of iron ; and they set up that they did pay for a large portion of this, and refused to pay the balance, and brought their action to recover back what they had paid. The Supreme Court, in that case, used the language which we have read as decisive of the facts there stated. In this case, it is conceded that the Iron Company, being a corporation, had no power, lawfully, to subscribe for stock in another corporation ; but they had subscribed, and they sought a benefit, and they knew all the facts in the case, and the Supreme Court say that the doctrine that a payment voluntarily made under a mistake of law, but with a full knowledge of the facts, cannot be recovered back, rests upon general principles of public convenience, and applies to a corporation as well as to a natural person.

Now, in principle, let us see how nearly that case resembles the case at bar. In this case the plaintiff sets up that he was upon the police force of the city of Toledo. This was to his advantage. He does not say so, but he indicates it.; it was greatly to his advantage to remain on the police force. He needed employment, and to secure his continuance in his employment there, he paid this money which he now seeks to recover back. There is no allegation that he did not know all the facts in reference to the matter ; there is no allegation that they took from him, without process of law, any property or money ; no allegation of any fact which prevented him from making his defense at the time; and if he had an opportunity to take his position and make his defense, then he cannot pay that money over and gain advantages which he was desirous of obtaining, and afterwards sue and recover it back upon the mere declaration that it was not legal, not a legal right of the city, or of the police board in this case, representing the city, to impose the fine.

In the Cleveland case it is held that the Iron Company had no right, being a corporation, to subscribe for stock in another corporation. But they had done so, and they had paid money on that subscription with a knowledge of all the facts ; and although they had no right to do it, legally, and could not have been compelled to, yet, having paid it, it must be held to have been paid voluntarily.

We think that the doctrine of that case covers, in principle, the case that is before us, and we must make the same holding, and sustain the demurrer to the petition. We do this construing the petition most favoraby to the plaintiff.

Some question might arise here as to whether the statements o

this petition are sufficiently accurate to contain what the plaintiff requires, but we give it the most favorable construction, and sustain the demurrer.

(See to the same effect *Gross* v. *City of Cincinnati*, Hamilton Co. Court of Com. Pleas, opinion by SAYLER, J., 29 W. L. B. 81.)

*A. J. Farquharson*, for plaintiff.

*C. F. Watts, City Soltcitor*, for defendant.